## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-2223

CHANCE STALEY, Individually and on
Behalf of All Others Similarly Situated

                            Plaintiffs,

v.

ARCH INSURANCE COMPANY, and
OUT OF TOWNE, LLC, d/b/a RED SKY
TRAVEL INSURANCE.

                            Defendants,

## CLASS ACTION COMPLAINT

Comes now, Chance Staley, individually, and on behalf of all others similarly situated ("Plaintiffs"), by and through the undersigned counsel, and files this Class Action Complaint against ARCH INSURANCE COMPANY and OUT OF TOWNE, LLC, d/b/a RED SKY TRAVEL INSURANCE (collectively "Defendants") and alleges as follows:

### INTRODUCTION

1.      This is a class action for breach of an insurance contract. Plaintiffs purchased optional insurance from Defendants to protect against the risk of not being able to use purchased ski passes ("Ski Passes").

2.      Defendants breached the insurance contract by refusing to reimburse or refund Plaintiffs for the loss of use of Ski Passes

3.      The insurance policies, which are materially the same for all members of the proposed class, expressly provide coverage for Plaintiffs who were not able to use the Ski Passes due to a covered peril, and represents to refund Plaintiffs for the cost of their Ski Pass minus the

applicable daily rate or pro-rata reduction for each day that Plaintiff used their Ski Pass during the 2019/2020 ski season.

4.      Defendants are in material breach of the insurance policy by failing to refund Plaintiffs who were unable to use their Ski Passes for reasons related to the COVID-19 pandemic.

5.      Defendants have caused material harm to Plaintiffs by improperly failing to make payment.

6.      Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b). Plaintiffs seek to recover compensatory damages as well as declaratory relief.

## PARTIES

7.      Plaintiff Chance Staley is a resident of Lakewood, Colorado located in Arapahoe County.

8.      Defendant Arch Insurance Company (d/b/a Arch Insurance Solutions) ("Arch") is a Missouri corporation.  As listed in the Sky Pass Preserver policy, its principal place of business 300 Plaza Three, Jersey City, New Jersey, 07311.

9.      Defendant Red Sky Travel Insurance ("Red Sky") is an Idaho corporation. Its principal place of business is 6 Juniper Trail, Kitty Hawk, NC 27949 or PO Box 750, Kitty Hawk, NC 27949. Red Sky is an assumed business name for Out of Towne, LLC ("Out of Towne"), a Virginia corporation with its principal place of business listed as PO Box 750, Kitty Hawk, NC 27949.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from

Defendants, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within Colorado such that Defendants have significant, continuous, and pervasive contacts with the State of Colorado.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District.

## FACTUAL BACKGROUND

### Introduction

13.     Defendants provide season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of their ski passes.

14.     Upon information and belief, Defendants provide this insurance service to customers of Alterra Mountain Company ("Alterra"). Alterra sells "Ikon Passes" promising access to skiing and snowboarding at resorts it owns and operates as well as to iconic "partnership resorts", such as Aspen, which are independently owned and operated. Consumers can purchase annual, weekly, or daily Ikon Passes in advance.

15.     To induce customers to purchase these passes in advance, and to mitigate the risk that consumers may be unable to realize the full use of their Ikon Pass for reasons beyond their control, pass insurance was offered to purchasers of Ikon Passes through Defendants. Upon information and belief, thousands of customers purchased optional pass insurance through Defendants.

**Plaintiff Purchased Ski Pass Insurance**

16.    Class Plaintiff Chance Staley purchased an Ikon Pass and optional Ikon Pass insurance through Defendants. Specifically, Plaintiff signed up for a season pass with the understanding that he would be able to access the resorts from October 2019 through the end of the ski season. To ensure he would be able to get a refund if he was unable to use the pass for reasons outside his control, Mr. Staley opted to pay an additional fee for pass insurance.

17.    On March 14, 2020, Alterra announced it was suspending operations and closing its mountain resorts in response to the COVID-19 pandemic beginning on March 15,2020 until "further notice." See the March 14, 2020, "Alterra Mountain Company Closure Announcement."[1]

18.    The Governor of Colorado and the President of the United States (among others) issued various orders, limiting human contact and restricting travel and activities to only those considered essential.[2] Skiing and snowboarding are considered non-essential activities.

19.    As a result of the closures and quarantine related restrictions, Plaintiff was restricted from traveling, entering upon, and/or using the facilities of any of the resort properties he would have otherwise been allowed to visit pursuant to his Ski Pass.

20.    As set forth in the Policy, Plaintiff is entitled to receive payment from Defendants for the pro-rated cost of his Ikon Pass.

21.    In order to adhere to Plaintiff's own obligations under the Policy, Plaintiff timely submitted an insurance claim (Claim # TVLC72515220) to Defendant Red Sky.

22.    Nevertheless, Defendant Red Sky denied the claim stating insurance policy does not provide coverage for facility closures. The denial letter does not address quarantine.

23.    Plaintiff and other purchasers of Defendants' pass insurance are entitled to coverage

---

[1] https://www.alterramtnco.com/news/2020/03/14/alterra-mountain-companyclosure-announcement
[2] https://covid19.colorado.gov/stay-home-except-essential-needs

as a result of their restriction from resorts due to the COVID-19 pandemic, but Defendants have failed to make payment without just cause or excuse.

### The Class Policy

24.    Plaintiffs purchased insurance from Defendants to protect against the risk of not being able to use the Ski Passes. A true and accurate copy of the "Ski Pass Preserver" policy ("Policy") is attached hereto as **Exhibit A** and is incorporated herein by reference.

25.    The Policy identifies Defendants as the insurers of the Policy. Defendants are the liable insurers under the Policy.

26.    The terms of the Master Policy were not subject to individual negotiation, and upon information and belief are materially the same for all policy owners ("Class Policy").

27.    Class Plaintiffs are each owners of a Class Policy, which was in force at the time of the alleged loss.

### Terms of the Policy

28.    The Policy begins explaining that, "We will pay the benefit providing the largest amount of coverage."

29.    The Policy goes on to explain that the Policy provides coverage for "Season Pass Interruption":

> **SEASON PASS INTERRUPTION**
> We will reimburse You, up to the Maximum Benefit Amount shown in the Schedule of Benefits, for the pro-rated cost of the remaining portion of the Covered Season Pass purchased, less any refunds received, which You purchased for the Season Pass Coverage Period, when You cancel the Season Pass for one of the following Unforeseen reasons:
>
> 1. Your or a Family Member's death, which occurs during the Season Pass Period;
> 2. Your or a Family Member's, covered Sickness or Injury which: a) occurs during the Season Pass Coverage Period, b) requires Medical Treatment at the time of interruption; and c) as certified by a Physician, results in medical restrictions so disabling as to prevent Your continued use of the Season Pass; or
> 3. for Other Covered Events;

provided that any such covered Unforeseen reason occurs while coverage is in effect for You.

Reimbursement will be calculated based on the first day of the Season Pass Coverage Period, regardless of the actual date the Season Pass was purchased.

30.    The Policy defines "Unforeseen" as follows:

"**Unforeseen**" means not anticipated or expected and occurring after Your purchase of the Season Pass Cancellation and the Season Pass Interruption coverage.

31.    The Policy defines "Maximum Benefit Amount" as follows:

"**Maximum Benefit Amount**" means the maximum amount payable for coverage provided to You as shown in the Schedule of Benefits.

32.    The Policy defines the "Season Pass" or "Covered Season Pass" as follows:

"**Season Pass**" or "**Covered Season Pass**" means Your Trails access pass to Ski for multiple days which you have purchased, and for which Season Pass Cancellation coverage or Season Pass Interruption coverage has been elected and premium paid.

33.    The Policy defines "Season Pass Coverage Period" as follows:

"**Season Pass Coverage Period**" means the period of time for which Season Pass Cancellation or Season Pass Interruption coverage is elected and the premium paid and for which a Season Pass has been purchased.

34.    The Policy states "Other Covered Events" means, in part:

a. You being hijacked, **<u>quarantined</u>**, required to serve on a jury (notice of jury duty must be received after Your Effective Date), served with a court order to appear as a witness in a legal action in which You are not a party (except law enforcement officers)…(emphasis added)

35.    The Policy does contain a definition section, but the Policy fails to define "quarantined."   A quarantine is generally defined as "to isolate from normal relations or communication,"[3] and "a restriction on the movement of people and goods which is intended to prevent the spread of disease or pests. It is often used in connection to disease and illness, preventing the movement of those who may have been exposed to a communicable disease, but do

---

[3] https://www.merriam-webster.com/dictionary/quarantine

not have a confirmed medical diagnosis."[4]

36.    While the Policy contains an exclusion section, the Policy contains no applicable exclusion for viruses, pandemics, or related government orders or actions taken by the resorts, independently or pursuant to such government orders.

## CLASS ACTION ALLEGATIONS

37.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:

38.    All persons who purchased a Ski Pass for the 2019/2020 ski season and purchased optional insurance from Defendants on their Ski Pass but were denied coverage for the loss of use of their passes after the resorts closed in March 15 of 2020 due to no fault of their own.

39.    Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiffs' counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

40.    Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

41.    The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

42.    Class members are readily ascertainable from information and records in

---

[4] https://en.wikipedia.org/wiki/Quarantine

Defendants' possession, custody, or control. Notice of this action can readily be provided to the class.

43.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendants' actions that are common to the class include, without limitation:

a. Whether the orders and directives from Alterra and other resorts suspending operations and closing resorts, and excluding Ikon Pass holders from those resorts, constituted a covered event, as a "quarantine," under the terms of the Policies;

b. Whether orders and directives from the many governmental and health authorities throughout the United States, which restrained travel and excluded participation in certain activities due to the presence of COVID-19, constituted a covered event, as a "quarantine," under the terms of the Policies;

c. Whether Defendants breached the terms of its Policies with Class members;

d. Whether the Class sustained damages as a result of Defendants' breaches of contract;

e. Whether the Class is entitled to damages, restitution, and/or other equitable relief; and

f. Whether the Class, or a subset of the Class, is entitled to declaratory relief stating the proper construction and/or interpretation of Defendants' Policies.

44.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

45.     Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased Ski Pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Event.

46.     Plaintiff will fairly and adequately protect and represent the interests of the

proposed class, because his interests are aligned with, and not antagonistic to, those of the proposed class, and she is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

47.    Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## CAUSES OF ACTION

### Count I: Breach of Contract

48.    The preceding paragraphs 1 – 47 are incorporated by reference herein.

49.    Plaintiff and the proposed class members purchased Ski Pass insurance from Defendants.

50.    The Class Policies are valid and enforceable contracts between the Defendants and Plaintiff and proposed class members.

51.    Plaintiff and the proposed class members substantially performed their obligations pursuant to the terms of the Class Policies.

52.    Plaintiff and the proposed class members suffered a season pass interruption after a covered event as they are defined under the Class Policies.

53.    Defendants failed to compensate Plaintiff and proposed class members for their respective losses as required by the Class Policies.

54.    As a direct and proximate result of Defendants' breaches, Plaintiff and the proposed class members have sustained damages that are continuing in nature in an amount to be determined at trial.

## Count II: Declaratory Relief

55.    The preceding paragraphs 1 – 54 are incorporated by reference herein.

56.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendants, on the other, concerning the respective rights and duties of the parties under the Class Policies.

57.    Plaintiff and the proposed class members contend that Defendants have breached the Class Policies by failing to timely pay Class Members for their respective losses. Defendants have failed to reimburse each member of the class for the Ski Pass cost minus the applicable pro-rata reduction for each day (or portion thereof) that the member has used his/her Ski Pass during the Ski/Snowboard season.

58.    Plaintiffs, therefore, seek a declaration of the parties' respective rights and duties under the Class Policies and request the Court to declare the aforementioned conduct of Defendants unlawful and in material breach of the Class Policies so that future controversies may be avoided.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests
relief and judgment against Defendants as follows:

(a)     That the Court enter an order certifying the class, appointing Plaintiff as

a representative of the class, appointing Plaintiff's counsel as class

counsel, and directing that reasonable notice of this action, as provided

by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)     For a judgment against Defendants for the causes of action alleged against
them;

(c)     For compensatory damages in an amount to be proven at trial;

(d)     For a declaration that Defendants' conduct as alleged herein is unlawful

and in material breach of the Class Policies;

(e)     For pre-judgment and post-judgment interest at the maximum rate

permitted by law;

(f)     For Plaintiffs' attorney's fees;

(g)     For Plaintiffs' costs incurred; and

(h)     For such other relief in law or equity as the Court deems just and proper.

Dated: July 28, 2020

Respectfully submitted,

By: / s/ Chris Lindstrom

    Christopher D. Lindstrom, #51052
    POTTS LAW FIRM, LLP
    3737 Buffalo Speedway, Suite 1900
    Houston, Texas 77098
    Telephone: (713) 963-8881
    Facsimile: (713) 583-5388
    E-mail: clindstrom@potts-law.com
    **ATTORNEYS FOR PLAINTIFF**